HAWAIIAN BELL TELEPHONE CO. *vs.* MUTUAL TELE-
PHONE CO.

EXCEPTIONS TO RULINGS OF McCULLY, J.

JULY TERM, 1885.

JUDD, C. J., and McCULLY, J. PRESTON, J., having been of
counsel, did not sit.

Chapter 45, Laws of 1874, allowing any company incorporated "for
the transmission of intelligence by electricity " to construct lines
along the public roads, held to be broad enough to cover the erec-
tion of poles and suspension of wires by a telephone company.

The Privy Council, in granting plaintiffs' charter, construed the Act
of 1874 as applying to telephone companies: held that such con-
struction, though not binding on this Court, is entitled to great
weight, as being the contemporaneous interpretation of the law
by a department of the Executive.

As the law authorizes the Minister of Interior to allow the construc-
tion of lines, it is not essential that the company obtain the Min-
ister's permission in the form of a written contract.

A second telephone company is bound to construct its wires so as not
to interfere with the wires of a company already established, and
it is no defense to an action for damage caused by interference of
wires that ordinary care and skill was used in constructing the
line of the second company.

Exceptions overruled.

OPINION OF THE COURT, BY JUDD, C. J.

This is an action in case tried at the July Term, 1885, of this
Court. The jury rendered a verdict for plaintiff, and the defend-
ant's exceptions, arising at the trial, were submitted on briefs by
consent in vacation.

Both plaintiff and defendant are incorporated telephone com-
panies, having lines throughout the town of Honolulu.

The plaintiff alleges that the defendant, during twelve months
past, has erected poles and wires in Honolulu for the purpose of
its business, but so negligently, carelessly and unskilfully, that

they have come in contact with the plaintiff's wires, and have interrupted the circuits of plaintiff's wires, and have destroyed their insulation, and have interfered with plaintiff's wires, etc., and defendant has wilfully, maliciously and repeatedly, especially during six months last past, refused to remove its wires from contact with the plaintiff's wires, and has allowed its wires to remain in contact with the plaintiff's wires for a long and unreasonable time, etc., for which damages are claimed.

Following is the bill of exceptions :

"At the close of the plaintiff's case, and again after the case on both sides was closed, the defendant moved the Court to instruct the jury to find a verdict for the defendant, on the ground that the plaintiff had shown no power conferred upon it by law for the construction of its telephone poles and wires, and other fixtures, in the streets of Honolulu and vicinity, as alleged in its declaration, which several motions were denied, and exception to such denial was duly taken and allowed.

"The plaintiff's charter, filed herein, was the only evidence on which the plaintiff based its claim that such power had been conferred upon it.

"The Court instructed the jury :

"That the plaintiff company was not bound to build its lines especially with reference to the establishment of new lines by companies which might afterwards come into existence, provided the plaintiff company had built its lines in a reasonable manner, as for instance not unnecessarily taking both sides of the road, and not unnecessarily making its lines so low and so high that they could not be crossed.

"That the defendant company was bound to construct its lines in such manner as not to lie in contact with plaintiff's wires, or to be an interference with the operation of plaintiff's instruments, provided that if such interference and obstruction be accidental, temporary, and not the result of unskillfulness and negligence, the plaintiff company may recover only actual damages, provided also that the plaintiff company must not have contributed by any want of ordinary skill and care on their part.

"That the plaintiff company would be entitled to have no in-

terruption by the defendant company in the operation of its lines.

"The defendant duly excepted to the said several instructions, and such exception was duly allowed.

"The defendant asked the Court to instruct the jury that the defendant was not liable for any damages which ordinary care and skill on its part could not have foreseen and prevented, which instruction the Court refused to give, and the defendant duly excepted to such refusal, and such exception was duly allowed.

"The Court instructed the jury that it was not actionable for the defendant to deprive or take away subscribers from the plaintiff by competition.

"There was no evidence tending to show any malice on the part of the defendant in respect of the acts complained of by the plaintiff.

"The evidence on both sides was that the defendant used the best material in the construction of its lines, and there was evidence on the part of the defendant that some of the interruption of the plaintiff's wires and instruments were caused by the breaking of a screw, in one instance, of an insulating knob in another instance, and by the blowing down of an algeroba tree in another instance.

"The defendant's witnesses testified that the utmost care had been taken on the part of the defendant to prevent its wires from interfering with the plaintiff's wires.

"Plaintiff's evidence tended to show that, during a large part (or most) of the six months preceding the date of the complaint, plaintiff had been interrupted in its business by defendant's wires being in contact with plaintiff's wires; that Cassidy, plaintiff's Superintendent, had spent a large portion (about half) of his time in endeavoring to discover the places of contact and in remedying the same; that he had employed an extra helper at $50 per month on account of the same; that said interruptions were caused in part by faults in construction of defendant's wires; that said interruptions had diminished since suit was brought.

"A. Jaeger, Secretary and Treasurer of defendant company, testified that his instructions to Superintendent Pratt were to avoid, even at any expense, any contact with the wires of the

Hawaiian Bell Telephone Company; and H. A. Widemann, President of defendant company, testified to the same effect.

"Pratt, Superintendent of defendant company, testified that he received and carried out these instructions to the best of his ability, and that the construction of the lines was patterned after that of a telephone company of San Francisco, excepting that the San Francisco system of wires went over buildings; also that he did his best in making the lines so as to avoid contact with plaintiff's lines.

"But he admitted, on cross-examination, that if defendant's poles were higher at places of crossing plaintiff's wires or nearer together, danger of contact from sagging of the wires would be avoided.

### BY THE COURT.

The first point made by defendant is that the plaintiff has no legal right to establish telephone lines in Honolulu.

The plaintiff's charter specially vests the corporation with all the powers, privileges, rights and immunities mentioned in Chapter 45 of the Session Laws of 1874, entitled: "An Act for the encouragement and aid of any company now incorporated or that may be hereafter incorporated for the transmission of intelligence by electricity." Section 1 of the Act reads: "The Minister of the Interior is hereby authorized and empowered to permit and allow any company now incorporated in any foreign country, or that may be hereafter incorporated in this Kingdom or any foreign country for the transmission of intelligence by electricity, to construct lines of telegraph upon and along the highways and public roads, etc."

We think the Act broad enough to cover the telephone companies. By this invention intelligence is transmitted by electricity. Wires hung upon poles erected at intervals along the streets are at present deemed necessary in the system of telegraph as well as of telephone lines. So far as use of the public streets is concerned the obstruction is the same, except that telephone companies require more wires. By means of a telegraph the electricity records marks visible to the eye, which are read, and thus intelligence is transmitted over the entire length of the wire. In a telephone electricity enables the sound of the human voice to be transmitted

along the wire. It is not essential to know whether telephones were invented and in use when the Act of 1874 was enacted, though we believe they were. The law-makers wisely made the Act broad enough to cover improvements and discoveries to be made by the researches of scientific men. If the company transmits intelligence by means of electricity, the law allows the erection of poles and the suspension of wires along the streets and roads of this Kingdom.

The Privy Council, in granting plaintiff's charter, construed the Act of 1874 as applying to telephone companies. But this Court, though not bound to follow without reason the construction placed by the Privy Council upon an Act of the Legislature in cases where the true construction is doubtful, such construction by the Privy Council is entitled to great weight. In the Supreme Court of the United States the contemporaneous and uniform interpretation of an Act of Congress by an executive department is entitled to weight, and in a case of doubt ought to turn the scale. See *Brown vs. United States*, 113 U. S., 571 (1884.) Numerous decisions of that Court are to the same effect. In *Edwards vs. Darby*, 12 Wheaton, 210, it was said: "In the construction of a doubtful and ambiguous law the contemporaneous construction of those who were called upon to act under the law and were appointed to carry its provisions into effect is entitled to great respect," and the Court refuses to interfere with such construction after it had been acted upon for a long time.

See also *Atkins vs. Disintegrating Company*, 18 Wall, 272; *Smythe vs. Fisk*, 23 Wall, 374, 382; *United States vs. Pugh*, 99 U. S., 265; *United States vs. Moore*, 95 U. S., 760, 763.

We feel fully justified in holding that plaintiff's charter authorized it to claim the privileges granted by the Act of 1874.

2. The Act authorizes and empowers the Minister to "permit and allow such company to construct its lines upon and along the highways and public roads." That he has so permitted and allowed these erections is evidenced by the fact that they have been erected. It is not essential that the plaintiff should obtain the Minister's permission in the form of a written contract. Without a law authorizing the same the planting of telephone poles along

the streets would be an obstruction which the Minister of Interior, in whose charge the streets are, would be obliged to object to.

3. The charge of the Court, that the defendant company was bound to construct its lines in such a manner as not to lie in contact with the plaintiff's wires or to be interfering with the operation of the plaintiff's instruments, is especially objected to by defendant's counsel.

We think the Court was right. This charge followed logically from the earlier part of the charge that "though the privileges granted to the plaintiff company were not exclusive, yet it was bound in the construction of its lines to make a reasonable use of its privileges, not taking an unnecessary amount of space along the roads and streets, but was not bound to build specially with reference to the lines of one or more companies which might come into existence thereafter." "The plaintiff company has now a right to the place and ground it has thus reasonably taken."

We think this instruction was correct. The advantage which the first occupier of the street has for purpose of erecting poles is certainly considerable. It has the choice of position, and what has been granted to it and what it has taken and occupies under its franchise cannot legally be granted to a subsequent company. A subsequently formed corporation takes its charter with this knowledge and must erect its lines with reference to the occupancy of the company holding the previous franchise, and takes the space that is left unoccupied. If this were not the law a third or fourth corporation might claim that it could run its lines intersecting or interlacing those of all previous companies, and thus practically destroy their franchises. For a new company to suspend wires over a former established system of wires, so that by the expansion caused by heat they should sag and thus come in contact with the lower wires, and remain so; would be trespass upon the rights of the former company. If this was done willfully and maliciously, exemplary damages could be claimed. If, as charged by the Court, the contact was not malicious and willful, but accidental and temporary, and no contributory neglect on the part of plaintiff is shown, actual damages suffered could be recovered.

This, we understand, was the proved case on which the jury

awarded the damages.   As stated in the complaint, "defendant refused to remove its wires from contact with plaintiff's wires for a long and unreasonable time."

This instruction asked for by defendant as defining its liability —to wit, "that defendant was not liable for any damage which ordinary care and skill on its part could not have foreseen and prevented"—does not express its entire liability, for if, even in the construction of its own lines, ordinary care and skill was used, and yet its lines should lie in contact and interrupt the communication over plaintiff's lines, this would be a trespass.

The exceptions are overruled.

*F. M. Hatch*, for plaintiff.

*A. S. Hartwell*, for defendant.

Honolulu, September 22, 1885.